IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01018-WDM-PAC

KAREN KOKINS, et al.,

Plaintiffs,

v.

TELEFLEX INCORPORATED,

Defendant.

## ORDER ON DISPOSITIVE MOTION

Miller, J.

This matter is before me Defendant's Dispositive Motion (Docket No. 84) filed May 21, 2007. Defendant argues that all claims should be dismissed with prejudice because Plaintiffs engaged in spoilation of evidence. Plaintiffs oppose the motion. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion is denied.

### Background

1. Underlying claim

This is a product liability case resulting from a personal injury to Karen Kokins. Kokins was employed by the City of Westminster (City) as a seasonal park ranger during the summer of 2004. On July 6, 2004, Kokins accompanied Jason Burandt, another park ranger, on a 19-foot Boston Whaler Guardian boat owned by City. As

they were traveling in the boat, the steering cable broke causing the boat to go into a sharp turn. Both Kokins and Burandt were thrown from the boat. As she was thrown from the boat, Kokins's leg became entangled with the boat and she suffered serious injury to her left leg and ankle. Kokins claims that these injuries are permanent. Because Kokins was working while she was injured, she was compensated by City for a workman's compensation claim. City paid over $100,000 to Kokins in medical expenses, temporary disability, and permanent partial disability. Slightly less than two years later, in May 2006, Kokins and City (collectively Plaintiffs) sued Defendant claiming that Defendant's steering cable was defective and caused the accident. It is undisputed that the physical cause of the steering cable's malfunction and break was corrosion and rust on the steering cable core. There is also no dispute that the steering cable that caused the accident was manufactured by Defendant.

2. <u>Steering Cable</u>

Defendant's motion to dismiss based on spoliation of evidence concerns the treatment of the steering cable after the accident. The inner "core" of the steering cable consists of a carbon steel wire laced with matting which is sprayed with rust preventative and surrounded by a layer of helical carbon steel. The core is then greased and covered by a protective polyethylene jacket (also called conduit or sheath). The cable runs from stem to stern with a telescopic end connected to the outboard motor at the stern. The telescopic end can be easily disconnected from the outboard motor so that grease can be added. When the boat's steering wheel is

turned, the cable core moves back and forth within the conduit causing the boat to turn. Unless the protective jacket is perforated, the cable is essentially waterproof except that water may enter from the telescopic end.

After the accident, the steering cable was examined and altered by several individuals. On July 7, 2004, the day after the accident, City took the boat to Great Lakes Marine (the company from which City purchased the boat) for repair. During repair of the boat, Robert Friedlander, the owner of Great Lakes Marine, removed the cable from the boat by cutting the cable out of the motor. There is another method by which the cable could have been removed from the boat that would have kept the cable in tact, but Friedlander opted not to use this method. Friedlander testified that he cut the cable out of the boat rather than use the other method because it was his standard practice and made the cable removal process easier. Friedlander testified that, before he removed the cable from the boat, he examined the cable and found no cuts, breaks, or damage on the cable. Friedlander kept the cable (now in two pieces) at the request of Mike Reddinger, head park ranger for City. Defendant alleges that Friedlander kept the cable until Plaintiffs' counsel directed that the cable be to released to Seth Bayer, an engineer who examined the cable at Plaintiffs' request. Plaintiffs allege that the cable was kept by Assistant City Attorney Jeffrey Betz from the time it was removed until September 2004 when it was released to Plaintiffs' attorney.

During his investigation, Bayer made two cuts in the cable. Although slightly unclear, it appears that Bayer (1) removed a small rectangular piece of stainless steel from the cable fitting that connected parts of the cable together and (2) removed a

section of the conduit. (*See* Bayer Dep. 42:6–24.) Neither of these two cuts severed the cable core. Bayer videotaped and photographed the procedures he performed on the cable. According to Defendant, when Bayer was finished the cable was in four pieces—two separate pieces of the entire cable, a "window" that had been removed from the cable, and a piece of conduit that had been removed from the cable. Bayer did not save any of the remnants (or saw tailings) of the cable resulting from any cutes he performed.

Dr. Bastiann D. Cornelissen examined the cable after Bayer had completed his examination. Cornelissen cut and removed a piece of conduit so that he could view the cable core where the failure occurred. (*See* Cornelissen Dep. 35:6–11.) Cornelissen also cleaned the cable using a commercial cleaner to remove the grease on the cable. Defendant alleges that this cleaning removed all of the grease from the cable thereby precluding it from analyzing the grease and its distribution on the cable. Plaintiffs allege that Cornelissen only cleaned the grease from one side of the cable and that Defendant has conducted an analysis of the grease. Cornelissen, like Bayer, did not save any of the remnants (or saw tailings) of the cable resulting from the cutting of the cable. After Dr. Cornelissen's examination of the cable, the cable was in five pieces.

It was at this point that Defendant was able to examine and test the steering cable.

## Legal Standard

"'Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable

litigation.'" *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Federal courts have authority to impose a variety of sanctions for spoliation including dismissal of the action. *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 2007 U.S. App. LEXIS 22680, at *43 (10th Cir. Sept. 24, 2007) (unpublished). This power derives from the inherent power of the court "necessary 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 1998 U.S. App. LEXIS 2739, at *11 (10th Cir. Feb. 20, 1998) (unpublished) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "When deciding whether to sanction a party for the spoliation fo evidence, courts have considered a variety of factors, two of which generally carry the most weight: 1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party." *Id.* at *13 (unpublished). The Tenth Circuit recently found "[a] spoliation sanction . . . proper where (1) the party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of evidence." *Burlington N.*, 2007 U.S. App. LEXIS 22680, at *44 (unpublished) (citing *103 Investors I, L.P. v. Square D. Co.*, 470 F.3d 985, 989 (10th Cir. 2006)); *see also Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 2007 U.S. Dist. LEXIS 15277, at *21–22 (D. Colo. Mar. 2, 2007) (unpublished) (holding that to consider whether to apply a spoliation sanction, the evidence must be relevant to an issue in the case and the party who destroyed the evidence must be under a duty to preserve the evidence). However,

the destruction need not be in bad faith to warrant spoliation sanctions. *Jordan F. Miller Corp.*, 1998 U.S. App. LEXIS 2739, at *13 (unpublished).

## Discussion

Defendant argues that Plaintiffs' entire case must be dismissed because Plaintiffs engaged in spoliation of evidence and does not seek any lesser sanction. Defendant alleges that it is unable to fully establish a defense to Plaintiffs' claim because its examination and analysis of the steering cable was limited to the cable after it had been cut and altered by Plaintiffs. Defendant argues that it "cannot ascertain whether there were damaged areas or perforated areas which may have allowed moisture or water to enter the cable, thus causing rusting and corrosion of the cable, which in turn caused the result in [sic] a parting of the cable at the time of the accident." (Mtn. to Dismiss at 15.) Essentially, Defendant alleges that the following actions by Plaintiffs are grounds for dismissal under the doctrine of spoliation:

1. Removal of the cable from the boat by Friedlander which deprived Defendant of the opportunity to see the cable as it was installed on the boat at the time of the accident including the condition and location of grease and curvature of the cable as installed on the boat.

2. Removal of the grease from the cable which deprived Defendant of the opportunity to compare the condition of the grease at various points on the cable including where the cable broke.

3. Discarding the remnants of the cutting process thereby precluding Defendant from analyzing the remnants.

4. Cutting the cable at the point where Defendant theorizes that the conduit was broken before the accident thereby precluding Defendant from confirming its belief.

Plaintiffs respond by setting forth a number of arguments including (1) none of the actions taken by Friedlander or Plaintiffs' experts were prejudicial to Defendant; (2) at the time Friedlander cut the cable, there was no duty to preserve evidence because litigation was not imminent; (3) Plaintiffs are not responsible for the actions of Friedlander; and (4) any spoliation that did occur does not warrant dismissal of the entire case.

1. Prejudice

With respect to the actions of Plaintiffs' experts (items two, three, and four above), Defendant has not set forth sufficient evidence of prejudice resulting from these actions. Defendant's own experts have admitted that the actions taken by Plaintiffs' experts, including cutting the cable, did not prevent them from performing any analysis on the cable that they wished to perform and did not prevent them from coming to any conclusions in the case. (See Robert K. Taylor Dep. 40:4–9, 57:17–25, 61:11–14; John Edward Slater Dep. 42:15–43:9.) Furthermore, although Defendant alleges that Cornelissen's cleaning of the grease from the cable is spoliation of evidence, Defendant was able to perform analysis on the grease and compare it to the grease applied during the manufacturing process. Defendant has also not set forth any reason why it was prejudiced by Plaintiffs' experts disposal of the saw tailings from the cuts of the cable. Notably, Defendant does not reply to Plaintiffs' showing of lack of prejudice

in Plaintiffs' response brief. Therefore, I find that dismissal is not appropriate for any actions by Plaintiff's experts. *See Jordan F. Miller Corp.*, 1998 U.S. App. LEXIS 2739, at *13 (unpublished) (holding that the two factors that carry the most weight in a spoliation sanction inquiry are (1) the degree of culpability of the party who destroyed evidence and (2) the degree of prejudice to the other party); *Burlington N.*, 2007 U.S. App. LEXIS 22680, at *44 (unpublished) (finding a spoliation sanction proper when the party has a duty to preserve evidence and the other party was prejudiced by the destruction of evidence (citing *103 Investors I, L.P.*, 470 F.3d at 989)).

In contrast, it appears that Defendant has asserted that it was prejudiced by the actions of Friedlander. Notably, Defendant's experts do not allege that Defendant was prejudiced by Friedlander's cutting of the cable, only that Defendant was prejudiced by Friedlander's removal of the cable from the boat without documentation. (*See* Taylor Dep. 40:4-9, 57:21-25; Slater Dep. 44:22-45:17.) Therefore, I will only address Friedlander's action of removing the cable without documenting its condition and location at that time. Two of Defendant's experts are critical of Friedlander's action in removing the cable because it denied them the ability to evaluate the routing of the cable in the boat and its condition as installed which may have revealed exculpating information about the cause of the break in the steering cable. As opposed to the pieces of cable which Defendant was able to fully examine and draw conclusions from, the actual location and condition of the cable immediately after the accident cannot be replicated and examined. Therefore, I find that the Plaintiffs' acts may have prejudiced Defendant.

2. Culpability

Plaintiffs do not refute that Friedlander's removal of the cable was harmful to Defendant's evaluation of the cause of the malfunction. Instead, they argue that when Friedlander removed the cable from the boat, they did not have a duty to preserve evidence because litigation was not imminent. Indeed, City took the boat to be repaired the day after the accident. Nothing indicates that the likelihood of litigation at this point was very high. However, City did preserve the evidence—it requested that Friedlander keep the cable rather than throw it away, his normal practice for repairs. It is also noteworthy that the city attorney was involved. Therefore, it appears that, although litigation was not imminent at the time City took the boat to be repaired, Plaintiffs were to some degree anticipating the need to examine the cable in the future. This indicates that a duty to preserve evidence may have arisen at the time the boat was taken in for repairs.

Plaintiffs further argue that the actions of Friedlander cannot be attributed to Kokins because she did not have any control over Friedlander's activities and cannot be attributed to City because City exercised no control over the method by which Friedlander repaired the boat. Defendant's only response is that Friedlander was "engaged by [City] to obtain the subject cable by removing the steering cable from the boat on July 6, 2004, and personally transmitting it to Plaintiffs' counsel Larson in the last half of September 2004" and City instructed Friedlander to keep the cable.[1] (Reply

---

[1] Plaintiffs contend that, from the time the cable was removed until September 2004, the cable was kept by the city attorney. They contend that the city attorney

at 2.)

With respect to City, even though City did not expressly tell Friedlander to cut the cable out of the boat, it took the boat to Friedlander to be repaired without instructing him to document the position and condition of the cable in the boat even though it instructed Friedlander to retain the cable. Therefore, it appears that City was at least responsible for not taking affirmative actions to preserve the evidence. However, this is a low level of culpability—it appears that City's foremost purpose was to repair the boat and not to investigate the accident or recover evidence. Furthermore, City did attempt to preserve evidence by requesting the cable not be discarded.[2]

With respect to Kokins, there is nothing to indicate that she should be held responsible for the actions of Friedlander. She was merely an employee of City, who owned the boat, and no showing has been made that she had control over the repairs of the boat. Therefore, I conclude that City is responsible for the actions of Friedlander while Kokins is not liable for the actions of Friedlander.

3. Sanction

With respect to the actions by Plaintiffs's experts, since there has been no showing of prejudice to Defendant, a spoliation sanction is not warranted. With respect to the actions of Friedlander, Defendant has shown some prejudice coupled with at least a small level of culpability. However, I do not believe that dismissal of the entire

---

transmitted the cable to Plaintiffs' attorney and not Friedlander.

[2] I do note, however, that bad faith is not a requirement for a spoliation sanction. See Jordan F. Miller Corp., 1998 U.S. App. LEXIS 2739, at *13 (unpublished).

case is warranted. The degree of prejudice is moderate but not completely damaging to the Defendant's case as testified to by Defendant's own experts. Because Defendant is able to move forward with its case regardless of the removal of the cable by Friedlander and neither Plaintiffs nor Defendants viewed the cable as attached to the boat, a spoliation sanction of dismissal is severe and should be reserved for more extreme circumstances than those presented here. See Meade v. Grubbs, 841 F.2d 1512, 1520 (10th Cir. 1988); Jordan F. Miller, 1998 U.S. Dist. LEXIS 2739, at *21 (unpublished) (citing id.). Defendant suggests no lesser sanctions.

Accordingly, it is ordered:

1. Defendant's Motion to Dismiss (Docket No. 84) is denied.

DATED at Denver, Colorado, on December 6, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge